IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM ELIENIST | ) |
| | ) |
| Petitioner, | )   C.A. No. 06-59 Erie |
| | ) |
| v. | ) |
| | ) DISTRICT JUDGE COHILL |
| JAMES SHIRMAN, | ) CHIEF MAGISTRATE JUDGE BAXTER |
| | ) |
| Respondent. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus file pursuant to 28 U.S.C. § 2241 be denied.

**II.    REPORT**

Petitioner, William Elienist, is a federal prisoner[1] and a citizen of the Bahamas. He is serving a 120-month sentence with a five-year term of supervision on a conviction of "Conspiracy to Possess with Intent to Distribute at Least 5 Kilograms of Cocaine," in violation of 21 U.S.C. § 846, and a conviction of "Possession of Counterfeit Currency," in violation of 18 U.S.C. § 472. The sentence was imposed on January 10, 2002, by the United States District Court for the Southern District of Florida.[2] He has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Docket # 1). In the petition, he claims that the Bureau of Prisons (the BOP) has improperly applied the Public Safety Factor of "Deportable Alien" to him.

### A.     Relevant Factual and Procedural History

The BOP's Security Designation and Custody Classification Manual provides guidelines

---

[1] When Petitioner filed this petition, he was confined at the Federal Correctional Institution at McKean, located in Bradford, Pennsylvania. He is currently confined at the United States Penitentiary in Leavenworth, Kansas.

[2] According to Respondent, if Petitioner receives all Good Conduct Time available to him under 18 U.S.C. § 3624(b), his projected release date is June 9, 2010. (Docket # 5 at 2). On March 9, 2006, the Immigration and Customs Enforcement issued a detainer against Petitioner, advising the BOP that an investigation has been initiated to determine whether Petitioner is subject to removal from the United States upon his release. (Docket # 5, document 1c).

1

that the BOP uses to place inmates in federal facilities commensurate with their security and program needs. At the time of the events in question, the version of the <u>Security Designation and Custody Classification Manual</u> that was in effect was set forth in Program Statement ("PS") 5100.07 (effective Sept. 3, 1999-Sept.12, 2006). Relevant excerpts of PS 5100.07 are attached to the Response (docket # 5) at Document 2.[3]

As the <u>Security Designation and Custody Classification Manual</u> explains, BOP policy recognizes that there are certain demonstrated behaviors which require increased security measures to ensure the protection of society. There are nine Public Safety Factors (PSF) which are applied to inmates who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., minimum security). The application of a PSF is meant to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior. (PS 5100.07, Chapter 1 at 1-2; PS 5100.08, Chapter 2, Page 4).

Of the nine PSFs, the designation of "Deportable Alien" was applied to Petitioner. (Docket #5, Document 1d). A "Deportable Alien" is defined as a male or female inmate who is a citizen of a foreign country. (PS 5100.07, Chapter 7, Page 3; <u>see</u> <u>also</u> PS 5100.08, Chapter 5, Page 9). An inmate with a PSF of Deportable Alien must be housed in at least a Low security level institution. (PS 5100.07, Chapter 7, Page 3; PS 5100.08, Chapter 5, Page 9).

Under PS 5100.07, the Deportable Alien classification had to be applied unless an inmate who is a citizen of a foreign country met <u>all</u> of the following criteria:

(1)   documented and/or independently verified history of stable employment in the United States for at least three years immediately prior to incarceration;

(2)   verified history of domicile in the United States for five or more consecutive years immediately preceding the inmate's incarceration for the current term of confinement; and

(3)   verified strong family ties in the United States.

---

[3] PS 5100.07 has been rescinded. It was replaced by PS 5100.08, effective September 12, 2006. PS 5100.08 may be found in its entirety at the BOP's website, www.bop.gov. It provides that: "All inmate classification decisions and related action will be made in accordance with procedures in this Program Statement and are effective immediately. Implementation for each inmate shall occur in accordance with his or her next regularly scheduled custody review." (PS 5100.08, Page 5). When relevant, differences between PS 5100.08 and PS 5100.07 will be noted.

(PS 5100.07, Chapter 7, Page 3, ¶ H(1)-(3)).  PS 5100.07 also provided that:

> The PSF [of Deportable Alien] shall not be applied when the Immigration and Naturalization Service (INS) or the Immigration Judge has determined that deportation proceedings are unwarranted and the Institution Hearing Program (IHP) Case Management Activity (CMA) assignment of NO IHP or IHP CMP ND is assigned.  Conversely, if the inmate is ordered deported (CMA of IHP CMP WD), the Deportable Alien PSF shall be applied regardless of the above criteria. . . . Cases with detainers for deportation investigations or other unusual situations will be evaluated individually.

(PS 5100.07, Chapter 7, Page 4).[4]

Petitioner challenged his Deportable Alien PSF classification to the warden at FCI Elkton (where he was previously confined) in connection with a request for transfer closer to his family in Florida.  That request was denied.  (Docket #5, Document 1b at 3).  His subsequent Administrative Remedy Appeal was likewise denied.  (Docket # 5, Document 1b at 6).  Petitioner then filed a Central Office Administrative Remedy, arguing again, *inter alia*, that he qualified to have the PSF Deportable Alien classification waived.  On November 8, 2005, Harrell Watts, Administrator, National Inmate Appeals, issued a response notifying Petitioner that his appeal was denied.  He explained to Petitioner that the denials of his challenge to his PSF classification were appropriate and in accord with BOP policy.  He stated:

> Records indicate you are classified as a citizen of Bahamas and are currently pending participation in the immigration hearing process.  We concur that the application of the Alien PSF is appropriate.  Should the Bureau of Immigration and

---

[4] PS 5100.08 "clarified" the Deportable Alien PSF.  (PS 5100.08, Page 2, ¶ 3k).  It eliminated the three factors cited in PS 5100.07, and now states:

> **Deportable Alien.**  A male or female inmate who is not a citizen of the United States.  All long-term detainees will have this PSF applied.  When applied, the inmate or the long-term detainee shall be housed in at least a Low security level institution.  The PSF shall not be applied, or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive Office for Immigration Review (EOIR) have determined that deportation proceedings are unwarranted or there is a finding not to deport at the completion of deportation proceedings.  The Institution Hearing Program CMA of NO IHP or IHP CMP ND will then be applied.  Additionally, the PSF shall not be applied if the inmate has been naturalized as a United States citizen.

(PS 5100.08, Chapter 5, Page 9).

Respondent did not update the Court on the rescission of PS 5100.07, or what impact that action has on the pending case.  The record before this Court, however, does not indicate that Petitioner has had a custody review since the implementation of PS 5100.08.  For that reason, it appears that his challenge that the PS 5100.07 factors were not properly applied to him is not moot.

3

> Customs Enforcement (ICE) determine through a hearing that you are not subject to deportation, your case will be reviewed by staff and adjusted accordingly. While we empathize with your family situation, we find you are appropriately designated.

(Docket # 5, Document 1b at 10).

On March 7, 2006, Petitioner, proceeding *pro se*, filed his petition for writ of habeas corpus under 28 U.S.C. § 2241 with this Court. (Docket #1). Therein, he raises one ground for relief. (Docket #1, ¶ 14.a). He contends that the BOP should not apply the Deportable Alien PSF to him.

On June 2, 2006, a Response was filed. (Docket # 2). Petitioner filed a motion for an extension to file a brief. (Docket # 7). That motion was granted, and Petitioner was notified that he had until October 26, 2006 to file a brief. Petitioner did not file a brief, however. The petition is now ripe for disposition.

### B.   Subject Matter Jurisdiction

Initially the Court notes that, although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976). Because Petitioner is challenging the terms (*i.e.*, execution) of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241.

### C.   Exhaustion

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court. United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). The BOP is the agency charged with administering the federal prison system, Wilson, 503 U.S. at 334-35, and for all federal prisoners challenging BOP determinations, the initial venue is the administrative process. The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. Respondent concedes that Petitioner has pursued an appeal of the challenged action through all levels of administrative review and, hence, available administrative remedies have been exhausted in this case.

4

**D.     Legal Analysis**

Petitioner contends that the PSF classification of Deportable Alien should not have been applied to him. He does not, however, explain why that classification is not applicable to him. He argues that the BOP "is failing to follow their own policy," and cites to the three factors set forth in PS 5100.07, which provided that unless an inmate meets all three factors, the PSF of Deportable Alien had to be applied, see supra. As set forth previously, those factors were: (1) documented and/or independently verified history of stable employment in the United States for a least three years immediately prior to incarceration; (2) verified history of domicile in the United States for five or more consecutive years immediately preceding the inmate's incarceration; and (3) verified strong family ties in the United States.

Presumably, Petitioner is contending that he satisfied each of the three criteria. However, as Respondent sets forth in the Response, Petitioner failed to meet the first criteria of stable employment for at least three years immediately prior to incarceration. (See docket # 5 at 4 & documents 1 & 1a). Therefore, the BOP properly applied the Deportable Alien classification to him.

Moreover, the BOP classification procedure is within the discretion of the Attorney General as delegated to the Director of BOP. See 18 U.S.C. § 4081; 28 C.F.R. § 0.96; see also Bell v. Wolfish, 441 U.S. 520, 547 (1979); Wilkerson v. Maggio, 703 F.2d 909, 911 (5th Cir. 1983) (it is well settled that prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status). Petitioner's allegation that the BOP "should not apply" a PSF classification to him simply does not implicate a constitutional or federal statutory violation that would entitled him to relief. He has not identified any legitimate constitutional or statutory basis to attack his classification, Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976),[5]

---

[5] In Moody v. Daggett, the Supreme Court addressed a challenge to the impact of a detainer on prison programming. The Court noted:
> We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In Meachum v. Fano, 417 U.S. 215, 224 (1976), for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate.

(continued...)

Montanye v. Haymes, 427 U.S. 236, 243 (1976).

In conclusion, having failed to show any federal statutory or constitutional violation, it is recommended that the petition be denied.

### III.   CONCLUSION

Wherefore, on the basis of the foregoing, it is respectfully recommended that the instant petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

/s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: February 15, 2007

---

[5](...continued)
The same is true of prisoner classification and eligibility of rehabilitative programs in the federal system.  Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.
429 U.S. at 88 n.9.